# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1753

_____

United States of America,

        Appellee,

v.

Robert L. Gillen,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Missouri.
\*
\*
\*

_____

Submitted: March 13, 2006
Filed: May 31, 2006

_____

Before ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

    Robert L. Gillen, pursuant to a written plea agreement, entered a plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In the plea agreement, the parties agreed to 30 to 37 months' imprisonment. The district court[1], however, sentenced Gillen to 63 months' imprisonment. Gillen appeals, arguing that the district court erred in not sentencing him in accordance with the plea agreement or, in the alternative, erred by not allowing Gillen to withdraw his guilty plea. We affirm.

_____

    [1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

## I. *Background*

Following arrest, Gillen pleaded guilty to the charge of being a felon in possession of a firearm. Gillen subsequently entered into a written plea agreement with the government, which provides, in relevant part:

> This Agreement binds only the defendant and the United States Attorney for the Western District of Missouri, and does not bind any other federal, state, or local prosecution authority.
>
> 6. The defendant understands that if the Court accepts this Plea Agreement but imposes a sentence which the defendant does not like or agree with, he will *not be permitted to withdraw his plea of guilty*. (Emphasis added).
>
> 10. With respect to the application of the Sentencing Guidelines to this case, the parties agree as follows:
>
> a. The applicable guideline section for the offense of conviction is U.S.S.G. § 2K2.1(a)(6).
>
> b. The base offense level is fourteen (14).
>
> c. The defendant has admitted his guilt and accepted responsibility for his actions, and he has done so in a timely fashion, allowing the United States to avoid the time and expense of preparing for trial. Consequently, the United States believes defendant is entitled to a two-level reduction pursuant to U.S.S.G. § 3E1.1. If applicable, the United States agrees that it will file a written motion prior to or at the time of sentencing setting forth the reasons why the United States believes defendant is entitled to a three level reduction for acceptance of responsibility.
>
> d. The defendant understands the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does *not* bind the Court or the United States Probation

Office with respect to the appropriate Guidelines levels. (Emphasis in original).

e.       The United States agrees not to seek an upward departure from the Guidelines and defendant agrees to not seek downward departure from the Guidelines. The Agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law.

Gillen acknowledged in the plea agreement that he read and understood it. In addition, at the change of plea hearing, Gillen acknowledged that he signed the plea agreement and had an opportunity to read it and fully discuss it with his attorney before he signed it. Gillen told the district court that he understood "all the terms of the plea agreement."

At the change of plea hearing, the district court asked Gillen the following question:

And do you understand, Mr. Gillen, that if you receive a sentence different from what you might otherwise presently anticipate and even if the result is you receive a greater sentence than what you might otherwise have anticipated, that you will nonetheless not be allowed to withdraw your guilty plea?

Gillen responded "yes" to the district court's question. The district court then accepted the plea agreement and ordered a presentence investigation. The United States Probation Office prepared a presentence investigation report, which computed Gillen's criminal history and offense level. As a result of the nature and number of Gillen's prior convictions, including assault, escape, felon in possession of a firearm, possession of narcotics, and carrying a concealed weapon, the probation office projected Gillen's base offense level to be 24 under § 2K2.1(a)(2).

Gillen objected to the recommended sentence before the sentencing hearing. At the hearing, Gillen argued that the plea agreement was binding on the court under Rule 11(c), or, in the alternative, that the court must allow him to withdraw his plea of guilty in the event that he was not sentenced consistent with the plea agreement. The district court responded:

> The plea agreement pursuant to its terms is not binding on the court. And it further was discussed with Mr. Gillen at the time of his changing his plea and entering a plea of guilty, that the agreement between the defendant and the government as to the sentencing guidelines is not binding on the court and that if the defendant received a sentence greater than what he otherwise anticipated he would not be allowed to withdraw his plea of guilty. And the defendant said he understood that. A thorough discussion of the consequences of defendant entering a plea of guilty were reviewed with the defendant and the defendant acknowledged that he understood all of those matters. So your motion for the defendant to be sentenced consistent with the terms of the plea agreement, or alternatively, to be allowed to withdraw his plea of guilty is denied.

The district court calculated Gillen's advisory Guidelines sentence. Gillen's base offense level was 20 under § 2K2.1(a)(4), which the district court reduced by 3 to 17 based upon his acceptance of responsibility. Coupled with his criminal history Category VI, Gillen's advisory Guidelines range was 51 to 63 months. The district court imposed a sentence of 63 months because of Gillen's "violent nature," "poor adjustment," and "continued refusal to conform his conduct with what is required under the law."

Gillen appeals, arguing that the district court was bound by the plea agreement or, in the alternative, that the district court should have allowed him to withdraw his plea.

## II. *Discussion*

First, Gillen argues that if the plea agreement is a "Type B" agreement, the district court did not comply with Federal Rule of Criminal Procedure 11(c)(3)(B). Gillen points out that Rule 11(c)(3)(B) required the court to inform him that he had no right to withdraw the plea if the court did not follow the plea agreement. Gillen contends the district court did not comply with Rule 11 when it asked Gillen whether he understood that he would not be able to withdraw his plea if "the result is you receive a greater sentence than what you might otherwise have anticipated." Alternatively, Gillen argues that if the plea agreement is a "Type C" agreement, the court clearly failed to inform him that it was rejecting the plea agreement and did not allow him a chance to withdraw his plea as required by Rule 11(c)(5).

Rule 11(c)(1) of the Federal Rules of Criminal Procedure provides:

> If the defendant pleads guilty . . . to . . . a charged offense, the plea agreement may specify that an attorney for the government will . . . (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (*such a recommendation or request does not bind the court*); or (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (*such a recommendation or request binds the court once the court accepts the plea agreement*). (Emphasis added).

If the plea agreement is a "Type B" agreement, then "the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request." Fed. R. Crim. P. 11(c)(3)(B). If the plea

agreement is a "Type C" agreement and the court rejects the agreement, the court must:

> (A) inform the parties that the court rejects the plea agreement; (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5)(A)–(C).

### A. *"Type B" versus "Type C"*

"The main difference between [the Type B agreement and the Type C agreement] is that under Rule 11[(c)(1)](C), the Government promises to 'agree,' which binds the district court at sentencing, and under Rule 11 [(c)(1)](B), the Government promises to 'recommend,' which does not bind the district court at sentencing." *United States v. Madison*, 16 Fed. Appx. 555, 557 (8th Cir. 2001) (unpublished).[2] In *Madison*, the plea agreement did not specify what type of agreement it was and contained elements of both types of agreements. *Id*. While the plea agreement stated that the government "stipulated and agreed" that the defendant was not eligible for any adjustment due to an aggravating role, it also stated that the defendant "agreed that the district court had jurisdiction and authority to impose any sentence up to the statutory maximum." *Id*. at 558. In addition, during the plea colloquy, the defendant "said he understood the final decision about how the guidelines would be calculated and, ultimately, what sentence would be imposed

---

[2]While *Madison* is an unpublished opinion that has no precedential value, we conclude that its reasoning is persuasive and apply it to the present case.

rested with the district court, and that if the district court figured the guidelines differently than the plea agreement, [he] would not have the right to withdraw his guilty plea." *Id*. "Considering the record as a whole," this court held that the agreement was not binding on the district court. *Id*.

The present case is similar to *Madison*. Here, the plea agreement did not specify which type of plea agreement it was. While it may resemble a "Type C" agreement by its use of language such as "the parties agree," the agreement clearly states that the plea agreement "binds only the defendant and the United States Attorney;" that the plea agreement "does not bind the Court or the United States Probation Office with respect to the Guidelines levels;" and that "if the Court accepts this Plea Agreement but imposes a sentence which the defendant does not like or agree with, [the defendant] will not be permitted to withdraw his plea of guilty." This information, coupled with the district court's statement to Gillen that "if you receive a sentence different from what you might otherwise presently anticipate and even if the result is you receive a greater sentence than what you might otherwise have anticipated, that you will nonetheless not be allowed to withdraw your guilty plea," indicates, as in *Madison*, that Gillen should have understood that the plea agreement was a non-binding "Type B" agreement.

B. *Whether the District Court Substantially Complied with the Requirements of Federal Rule of Criminal Procedure 11*

Federal Rule of Civil Procedure 11(h) provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." We have explained harmless error under Rule 11(h) as follows:

> In addressing the harmless error rule of subsection 11(h), the district court's error warrants reversal only if it had a significant influence on the

defendant's decision to plead guilty. The question of whether such an error may be harmless depends on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty. The failure to give the warning is not harmless error if there is a realistic likelihood that the appellant pleaded guilty under the misapprehension that he could withdraw his plea if the court did not follow the government's recommendation. Similarly, the error is not harmless if the appellant can present evidence that he would not have pleaded guilty had the district court given the warning.

*United States v. McCarthy*, 97 F.3d 1562, 1575 (8th Cir. 1996) (internal quotations and internal citations omitted).

In *McCarthy*, the defendant argued that the district court should have permitted him to withdraw his guilty plea because the court did not advise him that he could not withdraw his guilty plea if the court did not accept the government's recommendation concerning his sentence. *Id.* at 1575. We found that "the district court's failure to expressly give the required warning can be harmless error." *Id.* (citing Fed. R. Crim. P. 11(h)). We then held that the district court's failure to give the warning was harmless error because the warning "would have added precious little to the knowledge [the defendant] already possessed about the plea process." *Id.* At the plea hearing, the district court "expressly informed [the defendant] that the court was not required to accept any recommendation from the parties concerning a particular sentence, and [the defendant] expressly acknowledged his understanding of this statement." *Id.* In addition, the plea agreement itself expressly provided that "[i]f the factors are determined by the Court to differ from those stated above, the defendant shall not be entitled to withdraw from the plea agreement." *Id.* at 1576. We stated that such language was "the equivalent of the warning required under Rule 11(e)(2)." *Id.* The defendant indicated both in the plea agreement and at the change of plea hearing

that he understood the provisions of the plea agreement. *Id*. In looking at the written plea agreement to determine whether the failure to give the warning was harmless, we held that the terms of the plea agreement "could not have been clearer or more explicit." *Id*.

Here, the district court advised Gillen that it was not bound by the plea agreement and that it could impose a higher sentence than that stated in the plea agreement. Looking to the plea agreement, as we did in *McCarthy*, the plea agreement expressly stated it was only binding on Gillen and the United States Attorney. Second, the plea agreement stated that Gillen could not withdraw his plea of guilty if the court accepted the plea agreement but imposed a sentence the defendant did not like or did not agree with. Third, the plea agreement stated that Gillen understood that the Guidelines computation did "not bind the Court."

With regard to the plea colloquy, the district court, while not using the exact language of Rule 11(c)(3)(B), did ask the defendant whether he understood that if he received a "sentence different from what [he] might otherwise presently anticipate and even if the result is [he] receive[s] a greater sentence than what [he] might otherwise have anticipated," he would "not be allowed to withdraw [his] plea of guilty."

Furthermore, Gillen indicated, through his signature on the plea agreement and at the plea hearing, that he had read the plea agreement and understood the terms of the plea agreement. Therefore, viewing the plea agreement and the plea colloquy together, the district court's variance from the exact language of Rule 11(c)(3)(B) is, at most, only harmless error, as it did not affect Gillen's substantial rights, considering Gillen was advised in both the plea agreement and at the hearing that he would not be allowed to withdraw his plea.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____