# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3598

———————

United States of America,

        Plaintiff-Appellee,

v.

Edward L. Gray,

        Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Eastern
District of Missouri.

[PUBLISHED]

———————

Submitted: June 12, 2009
Filed: September 21, 2009

———————

Before BYE, HANSEN, and BENTON, Circuit Judges.

———————

PER CURIAM.

Edward Gray appeals his conviction, entered upon his plea of guilty, to a charge of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C § 922(g)(1). He asserts the district court committed reversible error by failing to inform him of the minimum and maximum sentences involved, as well as an obligation of the court to calculate the applicable Sentencing Guideline range and to consider it along with possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C § 3553(a). See Fed. R. Crim. P. 11(b)(1)(H),(I), and (M). We reverse.

# I

At the change-of-plea hearing, the district court asked Gray a series of questions so as to ensure his plea of guilty was knowing, intelligent, and voluntary. The district court then asked the Assistant United States Attorney ("AUSA") to advise Gray of the charge and the range of punishment in the case. The AUSA informed Gray of the range of punishment, stating:

> [A] maximum penalty provided by law is a term of imprisonment not to exceed ten years, a fine of not more than $250,000, or both. The Court may also impose a period of supervised release of not more than three years.
>
> In addition, however, pursuant to 18 U.S.C. § 924(e), if the defendant is determined to be an armed career criminal within the meaning of that provision, there is a possibility of a mandatory minimum sentence of 15 years imprisonment.

At no time did the court or the AUSA – as required by Federal Rule of Criminal Procedure 11 – inform Gray of the maximum sentence he could face if found to be an armed career criminal under 18 U.S.C. § 924(e), which is life in prison, or of the court's obligation to calculate the applicable Sentencing Guidelines range and to consider such range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

After Gray entered his plea of guilty, the United States Probation Office prepared a Presentence Investigation Report ("PSI"), finding Gray was an armed career criminal.

Gray filed *pro se* objections to the PSI.  Relevant to this appeal, he stated:

On the front page of the presentence report, under OFFENSE it lists my Count 1 as 924(e)(1) which enhances the sentence to 15 years to life, which is not what I was indicted under or pled guilty to.  I was indicted under 924(a)(2).  This is what is on my indictment, and what I pled guilty to.  There is a significant difference in the punishment range between the two categories.

At the sentencing hearing, Gray repeatedly informed the court he was not aware of the sentencing range he faced if found to be an armed career criminal:  "They told me that my charge carried one to ten; what I was indicted under.  And as we said, I was pleading guilty to.  That's what he told me.";  "I never heard of this until the PSI came.  I didn't hear of that thing. He didn't talk to me about that.  Through the whole time I've been locked up ain't tell me nothing about 15 years; a career thing.";  "Because when he said the time, he say one to ten."

The transcript reveals that, in response to Gray's objections, the district court judge responded dismissively towards the defendant for even lodging his objections:

THE COURT: What are you griping about now?

THE DEFENDANT: I misunderstood.  I am sorry sir.

THE COURT: What are you griping now?

THE DEFENDANT: I misunderstood it.  I mean --

THE COURT: No, no, no.  When I asked you when you had your hand up swearing and said you understood.  See, you have to give Caesar what is Caesar's, my man.

THE DEFENDANT: Yes sir.

THE COURT: Don't come in here with no wrong game with me. They say, "That will not play in Peoria," big guy.

THE DEFENDANT: Yes, sir.

THE COURT: You told me. I'm the Jessie James around here.

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: I told you what it was. Now you go up here talking some other stuff.

THE DEFENDANT: Can I please just say one thing, sir?

THE COURT: You've about said enough.

THE DEFENDANT: Okay.

THE COURT: But let's hear it anyway. Give you another chance to say something.

THE DEFENDANT: I probably just said it wrong. It came out wrong. This is – I didn't understand the numbers. I was at St. Genevieve. I ain't got no law books or nothing. I ain't know the 924.

THE COURT: I am not talking about all of that.

THE DEFENDANT: Oh, okay.

THE COURT: I am talking about when you were in here and the Assistant United States Attorney told you what the charge was.

THE DEFENDANT: Yes.

THE COURT: Told you how much time was involved. And I asked: "Did you understand?" You said, "Yes, sir."

THE DEFENDANT: Yes, sir.  Yes, sir.

THE COURT: Why you keep hollering about this then?

THE DEFENDANT: Because when he said the time, he say "one to ten."

THE COURT: Do you know who Jessie James is?

THE DEFENDANT: Yes, sir.

THE COURT: What am I just telling you?  That I am up here with this robe, flag, and all this stupid stuff.  Who is running this show?

THE DEFENDANT: You is, sir.

THE COURT:   Please.

THE DEFENDANT: You is, sir.  Sorry.

THE COURT: Why you run some stuff like that?  You said you understood.

THE DEFENDANT: I understand now.

THE COURT: So give it up.

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: That's why I might have to get out this two-by-four and hit you with it.

(Sent. Tr. pp. 6-9.)

In sum, the district court overruled or implicitly overruled Gray's *pro se* objections and later sentenced Gray to fifteen years' imprisonment.  This timely appeal followed.

## II

Gray alleges the district court violated Federal Rule of Criminal Procedure 11. Rule 11 requires the district court to follow certain protocol to ensure a defendant's plea is knowing, intelligent, and voluntary. Relevant here, Rule 11(b)(1)(H) requires the court to inform the defendant of the maximum possible penalty; subsection (b)(1)(I) requires the court to inform the defendant of the minimum penalty; and subsection (b)(1)(M) requires the court to inform the defendant of the district court's obligation to calculate the applicable sentencing guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C § 3553(a).

When considering an alleged Rule 11 error, this Court must first determine if the defendant objected before the district court. If so, we review for harmless error, and the government has the burden of proving the defendant's knowledge and comprehension of the omitted information would not have been likely to affect his willingness to plead guilty. United States v. Gillen, 449 F.3d 898, 903 (8th Cir. 2006). If not, we review for plain error, and the burden is on the defendant to show he would have plead not guilty but for the Rule 11 violation. United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004). We liberally construe *pro se* objections to determine whether the defendant objected. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hudson v. Gammon, 46 F.3d 785, 786 (8th Cir. 1995); see also United States v. Johnson, 134 F. App'x 990 (8th Cir. 2005) (unpublished); Atkinson v. Bohn, 91 F.3d 1127 (8th Cir. 1996).

Liberally construing Gray's *pro se* objections to the PSI and his complaints at the sentencing hearing, we find Gray repeatedly attempted to object that he did not understand by pleading guilty he could be subject to a 15-year mandatory minimum sentence or a maximum sentence of life in prison. In his objections, Gray claimed he

was only indicted under, and pled guilty to, § 924(a)(2), which carries a sentencing range of one-to-ten years, and that he never pleaded guilty to § 924(e)(1), which carries a fifteen-to-life sentencing range.  At his sentencing hearing, Gray told the court he did not learn of the possible sentencing under § 924(e)(1) until he received the PSI, and he repeatedly stated his belief he was only pleading guilty to an offense which carried a one-to-ten year sentence.  Liberally construed, these *pro se* arguments should be read as Gray objecting to the court's failure to inform him of the minimum and maximum sentences he faced, which are clear violations of Rule 11.  Because Gray timely objected to the alleged Rule 11 violations in district court, this Court reviews for harmless error.  <u>See</u> <u>United States v. Vonn</u>, 535 U.S. 55, 59 (2002).

Gray alleges the district court violated Rule 11 by failing to inform him of (1) the mandatory minimum sentence he could face; (2) the maximum sentence he could face; and (3) the district court's obligation to calculate the applicable Sentencing Guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

Rule 11(b)(1)(II) requires the district court to inform Gray of the minimum and maximum sentence he could face after pleading guilty. With respect to the minimum penalty, the advice given to the defendant by the AUSA (upon whom the district court judge relied to fulfill in part what is the court's duty under Rule 11) is as follows:

> The defendant is charged with being a felon in possession of a firearm under 18 U.S.C. 922(g).  And the statute provides penalties – <u>a maximum penalty provided by law is a term of imprisonment not to exceed ten years</u>, a fine of not more than $250,000, or both.  The Court may also impose a period of supervised release of not more than three years.
>
> In addition, however, pursuant to 18 U.S.C. § 924(e), <u>if</u> the defendant is determined to be an armed career criminal within the meaning of that

provision, there is <u>a possibility</u> of a mandatory minimum sentence of 15 years imprisonment. (emphasis supplied).

We have previously held there is "substantial compliance" with Rule 11 when a prosecuting attorney informs the defendant of the possible sentence he faces, and the court extensively questions the defendant to make sure the plea is knowing, intelligent, and voluntary. <u>United States v. Lambros,</u> 544 F.2d 962, 956-66 (8th Cir. 1976). However, the AUSA must do so accurately. The double conditional language (<u>if</u> . . . [then] . . . <u>a possibility</u>) utilized by the AUSA was in error. If a defendant is determined to be an armed career criminal pursuant to § 924(e), a 15-year minimum sentence is mandatory, not just a mere "possibility." The prosecutor's language substantially diminished and downplayed the seriousness of the actual situation the defendant faced and did little to alert him to a very real, direct, and substantial consequence of his plea.

With respect to Gray's maximum penalty, neither the district court nor the prosecutor informed Gray of the maximum sentence he faced – life in prison – should he be found to be an armed career criminal. Thus, because the district court erred in failing to inform Gray of either the minimum or maximum penalty he faced, we must determine whether the error was harmless.

In this context, the government must demonstrate Gray's knowledge and comprehension of the maximum sentence would not have affected his willingness to plead guilty. <u>Gillen</u>, 449 F.3d at 903.[1] Most cases in which Rule 11 violations were found to be harmless involve situations where the defendant was aware, or could have been made aware, of the omitted information through other means, e.g., a plea

---

[1]The district court also violated Fed. R. Crim. P. 11(b)(1)(M) by failing to inform Gray of its obligations concerning the Sentencing Guidelines; however, Gray never complained about this violation, and there is no evidence Gray would have proceeded differently had the district court complied with this subsection of Rule 11.

agreement containing the information the court omitted during the plea hearing. See id. at 903-04; United States v. McCarthy, 97 F.3d 1562, 1575-76 (8th Cir. 1996); United States v. Young, 927 F.2d 1060, 1062 (8th Cir. 1991). In this case, however, there was no plea agreement, nor any evidence demonstrating Gray ever knew or should have known that by pleading guilty his range of punishment could include life in prison. In contrast, Gray's repeated objections indicate he was unaware of the enhanced sentencing range he faced. Furthermore, his desire to vacate the plea, even after having received the statutory minimum, indicates he would have likely proceeded to trial rather than be subject to the increased sentencing range he faced as an armed career criminal. Thus, the government cannot meet its burden of demonstrating Gray's knowledge and comprehension of the maximum sentence he faced – life in prison – would not have affected his willingness to plead guilty.

In support of its argument for harmless error, the government points out Gray was sentenced to fifteen years' imprisonment, which is within the possible sentencing range to which he was informed by the court. Support for this argument can be found in the advisory committee notes to Rule 11, which provide as a possible example of harmless error a situation where "the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings." Fed. R. Crim. P. 11(h) Advisory Committee's notes (1983 amendment); see also United States v. Raineri, 42 F.3d 36 (1st Cir. 1994) (holding that error in understating maximum possible sentence was harmless because defendant was sentenced to a lesser sentence within the range of which he was made aware).

The government's argument fails, however, because the test for harmless error is whether the defendant's knowledge and comprehension of the omitted information would likely have affected his willingness to plead guilty. Gillen, 449 F.3d at 903. Thus, the question is not whether Gray was sentenced within the range of which the court did make him aware; rather, the question is, had Gray known of the full range to which he could be sentenced, would he have pled guilty in the first place. When

a district judge simply understates a maximum penalty by a relatively small amount and a defendant is sentenced within that range, it is possible, maybe even probable, the slight understatement of the maximum sentence did not affect the defendant's decision to plead guilty. In this case, however, the "judge did not understate the maximum penalty; rather, []he omitted mention of any maximum penalty." United States v. Jaramillo-Suarez, 857 F.2d 1368, 1372 (9th Cir. 1988) (holding the district court's failure to inform the defendant he could face a maximum of twenty years in prison was not harmless error, even though he was sentenced to the mandatory minimum, of which he was made aware). A complete failure to inform Gray of the maximum sentence is far different from the type of trivial understatement of a maximum sentence identified as harmless in the advisory committee's notes to Rule 11. Given the complete failure to inform Gray he could be sentenced up to life in prison should he be found to be an armed career criminal, as well as Gray's vociferous complaints upon learning the same, we cannot say with certainty that had Gray known of the accurate range of imprisonment he faced by pleading guilty, he would have pled guilty anyway.

The second argument which can be made in support of finding harmless error is a single statement Gray made during his sentencing hearing in which he said, "I'm not saying – I'm pleading guilty. I am responsible for what I done." Although this could be interpreted as a re-affirmation of his desire to plead guilty even after having learned of the true sentencing range, the tenor of the sentencing hearing belies such an assumption. Far from an unequivocal assertion of Gray's desire to plead guilty, this statement more likely indicates a defensive reaction to the district court's brusque treatment of his legitimate objections. Our result would likely be different had the district court recognized its Rule 11 violation and inquired of Gray, after a moment of reflection in light of the new information, whether he still wished to proceed with his guilty plea. Instead, the district court repeatedly maintained inaccurately (at least with respect to the maximum sentence) that Gray had been told of the possible sentencing range he faced, and it responded to his complaints with disdainful and

combative language. Thus, Gray's statement was more likely a defensive reaction to the district court's intimidation than a reasoned and fully informed statement of his desire to plead guilty having now learned of the maximum sentence he faced. Therefore, we are unconvinced this statement, standing alone, satisfies the government's high burden of proving Gray's knowledge and comprehension of the maximum sentence he faced would not have affected his decision to plead guilty.

## III

Accordingly, we vacate Gray's conviction and remand for further proceedings consistent with this opinion.

_____